**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **BONNIE B. GRAY and GARY GRAY,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**EDWIN B. PARRY; EXPRESS RECOVERY SERVICES, INC.; and JOHN DOES 1-10,**<br><br>**Defendants.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:07-cv-00113-DB-PMW**<br><br>**District Judge Dee Benson**<br><br>**Magistrate Judge Paul M. Warner** |

This case was referred to Magistrate Judge Paul M. Warner by District Judge Dee Benson pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are Express Recovery Services, Inc.'s ("ERS") and Edwin B. Parry's ("Parry") (collectively, "Defendants") (1) motions to stay[2] and (2) motions to dismiss.[3] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 23.

[2] *See* docket nos. 24, 26.

[3] *See* docket nos. 6, 9.

**BACKGROUND**

In approximately February 2004, Bonnie Gray ("Mrs. Gray") received personal medical services from Wasatch Endoscopy Center and signed an agreement with Wasatch Endoscopy Center indicating that she would be responsible for any extra costs or fees incurred to liquidate her account. After the great majority of the charges resulting from the personal medical services had been paid by Medicare, Mrs. Gray's account with Wasatch Endoscopy Center had a balance due of $90.73, which Mrs. Gray was unable to pay at that time. In May 2005, Wasatch Endoscopy Center assigned Mrs. Gray's past-due account to ERS for collection.

On June 10, 2005, ERS's counsel, Parry, filed a complaint on ERS's behalf in the Third District Court for the State of Utah against Mrs. Gray and her husband, Gary Gray ("Mr. Gray") (collectively, the "Grays"), to recover the $90.73 balance of Mrs. Gray's past-due account (the "State case"). The State case also sought to recover from the Grays certain other charges related to ERS's collection activities on Mrs. Gray's past-due account, including a $7.18 charge for interest and a $250.00 charge for attorney fees. Sometime in late-June 2005, the Grays filed an answer and counterclaims in response to the complaint in the State case.

On June 1, 2006, the Grays filed in the State case a motion for leave to amend their counterclaims and to add third-party claims against Parry. The Grays' proposed counterclaims and third-party claims included claims for: (1) a class action for similarly situated debtors, (2) "Common Law Violations," (3) "Violations of Fair Debt Collection Practices Act,"

(4) "Unauthorized Practice of Law," and (5) "Rule 11 Violations."[4] On September 1, 2006, Judge Stephen Roth issued a "Decision and Order" that ruled on several motions in the State case, including the Grays' motion for leave to amend their counterclaims and to add third-party claims against Parry. In denying that motion, Judge Roth stated:

> In this debt collection action, the [Grays] paid the debt to the medical provider about the same time the law suit was filed (by [ERS]'s allegations, after the suit was filed). The only remaining issue is the amount of attorney's fees owed under the contract that forms a basis of [ERS]'s suit for filing the collection action. The original amount of attorney's fees sought was $250 . . . . The court does not believe that justice requires an amendment tacking on a complicated class-action counterclaim to what began as a defense to a $250 claim. The claims themselves appear to have been developed by [the Grays] piecemeal in the course of proceedings on [a] motion to compel [previously filed by the Grays] and would serve principally to burden what started as a simple collection case with an unmanageable set of additional claims and parties that would dwarf and unduly complicate the original case. Such an approach is contrary to notions of judicial efficiency and is not in the interests of justice.
>
> The [c]ourt further concludes, based on the discussion . . . above, that the [Grays]' class action counterclaims are legally insufficient and therefore futile because the [Grays] lack traditional or public interest standing to bring them.[[5]]

Later in September 2006, the Grays filed with the Utah Supreme Court a petition for permission to appeal Judge Roth's interlocutory order in the State case. The matter was assigned

4 Docket no. 2, Untitled Exhibit, at "Attachment '13.'"

5 Docket no. 2, Untitled Exhibit, at "Attachment '15.'"

to the Utah Court of Appeals, which denied the Grays' petition in an order dated October 17, 2006.[6]

On February 26, 2007, the Grays filed the complaint in the instant case against Defendants,[7] followed by an amended complaint on June 25, 2007.[8] The Grays' amended complaint includes claims for "Violations of the Fair Debt Collection Practices Act," "Unjust Enrichment under Utah Common Law," and "Breach of the Utah Consumer Sales Practices Act."[9] All of those claims are based upon the same set of facts underlying the State case, namely, Defendants' collection efforts on Mrs. Gray's past-due account with Wasatch Endoscopy Center.

## ANALYSIS

### I. Motions to Stay

Defendants have each filed motions to stay this case. In support of their motions, Defendants argue that a stay of this case is appropriate under the *Colorado River* doctrine.[10] *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

---

[6] *See* docket no. 52, Exhibit C.

[7] *See* docket no. 1.

[8] *See* docket no. 2.

[9] *Id.*

[10] Defendants also argue that a stay is appropriate under the *Younger* doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). However, because the court's analysis under the *Colorado River* doctrine is determinative of the motions to stay, the court does not reach Defendants' *Younger* doctrine argument.

**A. *Colorado River* Doctrine**

"The *Colorado River* doctrine applies to 'situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts.'" *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (alteration in original) (quoting *Colorado River*, 424 U.S. at 817). "The doctrine permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817) (other quotations and citation omitted).

Under the *Colorado River* doctrine,

> federal courts may decline to exercise their jurisdiction, in otherwise "exceptional circumstances," where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration."

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quoting *Colorado River*, 424 U.S. at 813, 817) (other quotations and citation omitted). Accordingly, "federal courts have the power to refrain from hearing cases that . . . are duplicative of a pending state proceeding." *Id.* (citing *Colorado River*, 424 U.S. at 800) (other citations omitted); *accord Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) ("The *Colorado River* Doctrine controls when deciding . . . whether a district court should . . . stay[] or dismiss[] a federal suit pending the resolution of a parallel state court proceeding. In other words, the *Colorado River* Doctrine was adopted to avoid duplicative litigation." (citations omitted)).

**1. Parallel Proceedings**

Before determining whether "exceptional circumstances" exist, "a federal court must first determine whether the state and federal proceedings are parallel." *Maulding*, 16 F.3d at 1081. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id*. (quotations and citations omitted). In the Tenth Circuit, the court should not consider the state proceedings as they theoretically could exist; instead, the court should "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." *Id*. This approach "heeds the Supreme Court's admonition in *Moses H. Cone* that to grant a stay or dismissal under the *Colorado River* doctrine would be 'a serious abuse of discretion' unless 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.'" *Id*. (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

As noted by the Grays, because Parry is not a party in the State case, the parties in this case are not identical to the parties in the State case. However, it is not a requirement that the parties be identical. Instead, the parties must merely be substantially similar. *See id*. While it is true that Parry is not a party to the State case, he is acting as counsel for ERS in that case. Further, the Grays themselves sought to include Parry as a party in the State case when they filed their motion in the State case seeking, in part, to add third-party claims against him. Under these circumstances, the court concludes that the parties in this case are substantially similar to the parties in the State case.

The Grays also note that the issues in this case and the State case are not identical. Again, however, the issues need not be identical, they must only be substantially similar. *See id*. The events and facts underlying both this case and the State case are the same. Indeed, the Grays' claims in this case are essentially the same claims they attempted to assert in the State case. Accordingly, the court concludes that the issues involved in this case and the State case are substantially similar.

Based upon the foregoing, the court has determined that this case and the State case are parallel proceedings. The court will now examine whether exceptional circumstances exist to warrant a stay of this case.

**2. Exceptional Circumstances**

> In *Colorado River*, the Supreme Court set forth a nonexclusive list of factors for courts to consider in deciding whether "exceptional circumstances" exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. The Court discussed several other factors in *Moses H. Cone*, such as [(5)] the vexatious or reactive nature of either the federal or the state action; [(6)] whether federal law provides the rule of decision; and [(7)] the adequacy of the state court action to protect the federal plaintiff's rights. Other courts also have considered [(8)] whether the party opposing abstention has engaged in impermissible forum-shopping.

*Id*. at 1082 (citing *Moses H. Cone*, 460 U.S. at 18 n.20, 23, 28; *Colorado River*, 424 U.S. at 818) (other citation omitted). "No single factor is dispositive; 'the weight to be given to any one

factor may vary greatly from case to case, depending on the particular setting of the case.'" *Id*. (quoting *Moses H. Cone*, 460 U.S. at 16).

In this case, the first factor is not relevant because neither court has assumed jurisdiction over any property. The second factor also is not relevant because the two forums appear to be of equal convenience to the parties.

The third factor, on the other hand, is relevant to the court's determination of whether exceptional circumstances exist in this case. However, because the third factor (piecemeal litigation) is closely related to the eighth factor (forum shopping), and because both factors are relevant to the court's determination, the court will address both factors together when reaching the eighth factor below.

The fourth factor is likewise relevant because the State case was filed in June 2005, while this case was not filed until February 2007. The State case is much further along than this case. The parties have already engaged in discovery in that case, while neither ERS nor Parry has even filed an answer in this case.

Turning to the fifth factor, the court has determined that this case may indeed be of a reactive nature. The Grays did not file this case until after they were provided with an unfavorable outcome in the State case on their motion for leave to amend their counterclaims and to add third-party claims against Parry. Given both the interlocutory nature of Judge Roth's ruling on that motion and the obvious right to appeal that ruling after the State case ends in a final judgment, the court views with skepticism the Grays' assertion that they could pursue their claims in this case while waiting for a final judgment in the State case. In the court's view, those

facts demonstrate that this case was filed, at least in part, as a reaction to Judge Roth's interlocutory ruling.

As to the sixth factor, federal law does provide the rule of decision, but only for a portion of this case. Concerning the seventh factor, the court has not been provided with any reason to doubt that the State case provides adequate protection for the Grays' rights.

Finally, and most significantly, the court will address together the third factor, piecemeal litigation, and the eighth factor, forum shopping. In the State case, the Grays filed a motion for leave to amend their counterclaims and to add third-party claims against Parry. Judge Roth denied that motion. The Grays obviously disagree with that ruling but have not waited for a final judgment to be entered in the State case so that they can exercise their right to appeal it. In what appears to be a clear recognition of the requirement of a final judgment as a prerequisite to an appeal, the Grays pursued one of the exceptions to that requirement by filing a petition in the State case for permission to appeal from an interlocutory order. The appellate court denied that petition. The practical effect of that denial is that the Grays are required to wait for a final judgment in the State case before they can voice their disagreement with Judge Roth's ruling by way of an appeal. Further, by filing the petition to pursue an interlocutory appeal, the Grays have made clear their intention to appeal that ruling when a final judgment is eventually rendered in the State case.

In light of all of this information, the court is puzzled by the Grays' decision to file this case. The Grays' complaint in this case includes many of the same claims that Judge Roth did not permit them to pursue in the State case. As noted above, the Grays will likely appeal Judge

Roth's ruling once a final judgment is rendered in the State case. Rather than following that proper and logical course of action, the Grays instead chose to file this case to pursue the same claims in federal court that will be the subject of their likely appeal in the State case. It appears that the Grays are simply hoping that this court will provide them with a more desirable outcome on those claims than the outcome provided in the State case. Not only does that course of conduct raise potential res judicata and collateral estoppel issues, but it also constitutes piecemeal litigation and impermissible forum shopping.

As to any claims the Grays have asserted in this case but have not attempted to bring in the State case, the court also views those claims as an attempt at piecemeal litigation and impermissible forum shopping. The court sees no reason why the Grays could not attempt to pursue those claims in the State case. Indeed, even the Grays admit that the "state court and this federal court have joint jurisdiction over [the Grays'] federal claims now before this federal court."[11]

Based upon the foregoing, and pursuant to the *Colorado River* doctrine, the court has determined that exceptional circumstances exist in this case that warrant a stay in deference to the State case. *See id*. Therefore, **IT IS HEREBY RECOMMENDED** that Defendants' motions to stay be **GRANTED** and, accordingly, that this case be **STAYED** under the *Colorado River* doctrine pending resolution of the State case.

---

[11] Docket no. 39. This quote is taken from only Mrs. Gray's memorandum in opposition to Defendants' motions to stay; however, Mr. Gray, in his memorandum in opposition to Defendants' motions to stay, incorporated all of the arguments set forth by Mrs. Gray in her memorandum in opposition to Defendants' motions to stay. *See* docket no. 38.

**II. Motions to Dismiss**

Defendants have each filed motions to dismiss this case, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. As part of those motions, Defendants have requested that they be awarded their attorney fees incurred in defending against the Grays' complaint, pursuant to 28 U.S.C. § 1927, the Fair Debt Collection Practices Act, and Utah Code § 78-27-56.

Given that Defendants' motions to stay and motions to dismiss present alternative requests for relief, the court could simply conclude that Defendants' motions to dismiss should be denied based upon the foregoing conclusion that Defendants' motions to stay should be granted. Put another way, it would be illogical for the court to engage in the analysis under the *Colorado River* doctrine and conclude that this case should be stayed, only to have that analysis and conclusion followed by a recommendation that this case be dismissed. Nevertheless, for purposes of clarification, the court will address the arguments presented in Defendants' motions to dismiss.

In support of their motions, Defendants argue that this case should be dismissed under either the doctrine of res judicata, which is also known as claim preclusion, or the doctrine of collateral estoppel, which is also known as issue preclusion. Under both Tenth Circuit and Utah precedent, a required element of both of those doctrines is that the prior action must have ended in a final judgment on the merits. *See Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (stating that "[i]n this circuit, application of issue preclusion requires four elements," including the requirement that "the prior action has been finally adjudicated on the merits" (quotations and citations omitted)), *cert. denied*, 127 S. Ct. 1132 (2007); *MACTEC, Inc. v. Gorelick*, 427 F.3d

821, 831 (10th Cir. 2005) (stating that "[u]nder Tenth Circuit law, claim preclusion applies when three elements exist," one of which is "a final judgment on the merits in an earlier action"), *cert. denied*, 547 U.S. 1040 (2006); *Snyder v. Murray City Corp.*, 73 P.3d 325, 332 (Utah 2003) (stating that "[t]he doctrine of issue preclusion applies where the party seeking preclusion establishes . . . four elements," including the requirement that "the first suit must have resulted in a final judgment on the merits" (quotations and citations omitted)); *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663, 678 (Utah 2002) (stating that "[t]he party moving a court to dismiss on claim preclusion grounds bears the burden of establishing three elements," including the requirement that "the first suit must have resulted in a final judgment on the merits" (quotations, citations, and emphasis omitted)).

Although the court recognizes that the two sets of motions before the court present alternative requests for relief, it is not lost on the court that Defendants have made diametrically opposed arguments in support of their motions to stay and their motions to dismiss. Defendants have already argued, and the court has agreed, that a stay of this case is appropriate based, in part, on the fact that the State case is pending and has not resulted in a final judgment. Defendants now argue that this case should be dismissed based, in part, on the fact that Judge Roth's ruling is a final judgment. Given the court's agreement with the former argument, it would be inconsistent for the court to also agree with the latter argument. Further, as the court has already established, the State case has not resulted in a final, appealable judgment. Accordingly, Defendants' res judicata and collateral estoppel arguments must fail.

Defendants also present arguments about several of the specific claims contained in the Grays' complaint in this case. In light of the court's conclusion that this case should be stayed under the *Colorado River* doctrine in deference to the State case, it would be imprudent for the court to reach any conclusions about any of the claims the Grays have asserted in this case. The Grays have already attempted, albeit unsuccessfully at this point, to pursue in the State case many of the same claims they are pursuing in this case. Those claims are the subject of a likely appeal by the Grays at some point in the future. As to any claims the Grays have asserted in this case but have not attempted to bring in the State case, the court has already indicated that it sees no reason why the Grays could not attempt to pursue those claims in the State case. It again would be inconsistent for the court to conclude that this case should be stayed in deference to the State case and, at the same time, reach conclusions about the Grays' claims in this case, which either are the subject of a likely appeal in the State case or could potentially become part of the State case. Accordingly, the court will not reach Defendants' remaining arguments in support of their motions to dismiss.

Finally, the court has considered Defendants' request for attorney fees incurred in defending against the Grays' complaint. The court concludes that such an award is unwarranted.

For these reasons, **IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss and requests for attorney fees be **DENIED** at this time.

In summary, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motions to stay be **GRANTED** and, accordingly, that this case be **STAYED** under the *Colorado River* doctrine pending resolution of the State case.[12]

2. Defendants' motions to dismiss and requests for attorney fees be **DENIED** at this time.[13]

* * * * *

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1)(C). The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. *See id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of March, 2008.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

[12] *See* docket nos. 24, 26.

[13] *See* docket nos. 6, 9.